**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KATHLEEN NICHOLAS-GOULD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES P. MCDONALD, JR. AND | : | |
| SUSANNE MCDONALD | : | |
| | : | No. 1009 EDA 2022 |
| Appellants | : | |

Appeal from the Judgment Entered March 14, 2022
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2018-06816

BEFORE:  PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 7, 2023**

Charles P. McDonald, Jr., and Susanne McDonald (h/w) (collectively, the McDonalds/Sellers) appeal from the judgment, entered on the non-jury verdict in the Court of Common Pleas of Bucks County, in favor of Appellee Kathleen Nicholas-Gould (Buyer) in the amount of $69,459.30, in this residential real estate case.  After careful review, we affirm on the basis of the opinions authored by the Honorable Robert O. Baldi.

On March 11, 2018, the parties executed an agreement of sale, in the amount of $480,000.00, for property (Property) located at 3912 Street Road[1] in Buckingham Township, Bucks County.  Sellers had purchased the Property in November 2005 and made extensive improvements to it, including

---

[1] The home was approximately 50 years old at the time of the sale.

removing a lower portion of the wall in the corner bedroom in 2013, as well as converting the garage into a family room in or around 2007.

On February 22, 2018, Sellers executed a Real Estate Disclosure Statement (Disclosure Statement) that included, among other things, the following averments:

- Sellers "were not aware of any past or present movement, shifting, deterioration, or other problems with walls, foundations, or other structural components[;]"

- Sellers "were not aware of any past of present problems with driveways, walkways, patios, or retaining walls on the property[;]"

- Sellers "were not aware of any past or present water infiltration in the house or other structures, other than the roof, basement[,] or crawl spaces."

Seller's Property Disclosure Statement, 2/22/18, at ¶¶ 7(A), (B), & (C). On March 11, 2018, Buyer reviewed the Disclosure Statement and testified that based on the Disclosure Statement she believed that there were no structural problems with the Property. N.T. Non-Jury Trial, 10/6/20, at 34. Finally, Buyer testified that she relied upon the representations in the Disclosure Statement when she decided to purchase the Property. *Id.* at 32.

Buyer hired a company to inspect the Property prior to closing. The inspector issued a report, dated March 16, 2018, listing items in/on the Property that needed corrective work. In particular, the inspection report noted that there were material defects with regard to the roof drainage system (a defective rain gutter/downspout) and the chimney (placement of right roof framing member). *See* Inspection Report by Steve Maurer of Maurer

- 2 -

Inspections, LLC, 3/16/18, at 4.[2]  The inspection report also noted that everything "appeared functional" in the interior of the Property, except for certain steps, stairways, balconies, and railings, which Mr. McDonald subsequently fixed.  The remaining problem items were either addressed or waived by the parties prior to settlement.[3]

The parties made settlement on the Property on April 30, 2018.[4] Following settlement, Buyer "discovered that the Property was riddled with numerous undisclosed material defects that were neither readily observable nor discoverable by [Buyer's] inspector," including, but not limited to, a deteriorated and failing front wall on the main level, basement and crawlspace flooding, cracked floor tiles in the family room, deteriorating masonry on the outside front of the home, and a failing split-rail backyard fence.  Complaint, 11/26/18, at ¶¶ 23-45.  In particular, Buyer discovered that the front wall of one of the bedrooms was bulging and that water was seeping through the paint.  When Buyer cut open a portion of that wall, she found that the studs

---

[2] The inspection report also noted that further evaluation by a qualified chimney sweep was required to assess the condition of the chimney's flues and vents as the interior chimney and furnace flues could not be inspected because that was "beyond the scope of a home inspector." *Id.*

[3] A $3,500.00 adjustment in favor of Buyer was applied to the final purchase price of the Property to account for the cost to repair some of the problems noted in the inspection report.

[4] The parties stipulated that the closing date of the sale was April 30, 2018.

were so deteriorated from water damage that new studs had been "sistered"[5] to the old studs to prevent the wall from completely falling down. In addition, Buyer noticed that pieces of wood and insulation inside the wall were moist and contained dark spots/mold, that the drywall or plasterboard was destroyed, and that the masonry was crumbling.

On November 26, 2018, Buyer filed a complaint against Sellers alleging violations of the Real Estate Seller Disclosure Act (RESDL)[6] and the Unfair Trade Practices and Consumer Protection Act (UTPCPL).[7] In her complaint, Buyer requested treble damages, as well as attorneys' fees and costs. Sellers filed an answer, new matter, and counterclaim asserting breach of contract.[8]

Following a three-day non-jury trial, held in October 2020,[9] Judge Baldi found in favor of Buyer, concluding that Sellers' failure to disclose material

---

[5] "A sister stud is a secondary stud that is installed alongside an existing stud. It is usually used to reinforce a stud that has been damaged or is bowed in a manner that compromises its load-bearing capacity." https://knowledgeburrow.com/what-does-sistering-mean-in-construction/#:~:text=What%20does%20Sistering%20mean%20in%20construction%3F%20A%20sister,in%20a%20manner%20that%20compromises%20its%20load-bearing%20capacity. (last visited 12/28/23).

[6] 68 Pa.C.S.A. §§ 7301-14.

[7] 73 P.S. § 201-1, *et seq*.

[8] The parties jointly stipulated to the following: Buyer will withdraw a claim for negligence and Sellers will withdraw their counterclaims for loss of the bargain and for attorneys' fees.

[9] On the second day of trial, Mrs. McDonald testified that she adopted her husband's testimony as her own. N.T. Non-Jury Trial, 10/7/20, at 99.

defects—specifically, moisture damage and deterioration of the front wall of the Property that extended from a corner bedroom to the family room—constituted a violation of the RESDL and the UTPCPL.[10]  The trial judge awarded Buyer $50,940.00 in compensatory damages[11] to cover the costs to repair the deteriorating walls.

On July 20, 2021, Sellers filed a post-trial motion, which the court subsequently denied.  Buyer filed a post-trial petition seeking attorneys' fees and costs under the UTPCPL;[12] Sellers filed an answer opposing the petition. On March 7, 2022, the trial court granted Buyer's petition, awarding Buyer $14,838.50 in attorneys' fees and $3,680.80 in costs.  **See** 73 P.S. § 201.9.2 (statute authorizing recovery of "reasonable" attorneys' fees and costs for violation of UTPCPL).

_____

[10] The court specifically found that Sellers reasonably believed that their installation of a second sump pump corrected any significant flooding issues in the Property's basement and crawl space and, thus, Buyer could not recover for Sellers' alleged failure to disclose this issue.  The court also found that Buyer could not recover for alleged flooding in the yard of the Property where no evidence was presented at trial to show that the flooding had a significant impact on the value of the Property or that it involved an unreasonable risk to people on the Property.  Finally, the court found that Buyer could not recover on the failing split-rail fence or deteriorating masonry on the front of the home.  **See** Trial Court Opinion, 7/1/21, at 21.

[11] Although permissible under the UTPCPL, the court declined to award treble damages.

[12] The parties stipulated that any request that Buyers may have for attorneys' fees under the UTPCPL would be heard via post-trial motions without the need for expert testimony as it relates to the reasonableness of attorney rates.

Sellers filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Sellers present the following issues for our consideration:

(1)     Whether the [trial c]ourt improperly relied on testimony that the parties and the [trial c]ourt stipulated could not be used to establish liability[.[13]]

(2)     Whether there was sufficient competent evidence introduced at trial that the [Sellers] were aware of any material defects in the front bedroom wall[.]

(3)     Whether there was sufficient competent evidence that the [Sellers'] statement that they were not aware of any material defects in the front bedroom wall were false, deceptive, and misleading[.]

(4)     Whether there was sufficient competent evidence to support actual damages in the amount of $50,940.00[.]

(5)     Whether the [trial c]ourt erred in applying the UTPCPL to this case because the [Sellers] are individual consumers that were [not] and are not in the business of selling homes.

Appellants' Brief, at 7.

> Upon appeal of a non-jury trial verdict, an appellate court considers the evidence in a light most favorable to the verdict winner and will reverse the trial court only if its findings of fact lack the support of competent evidence or its findings are premised on an error of law. When an appellate court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support

---

[13] Sellers did not preserve this issue in post-trial motions. Thus, it is waived on appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived.").

- 6 -

or that the court capriciously disbelieved the evidence. It is inappropriate for an appellate court to make factual determinations in the face of conflicting evidence.

*Phelps v. Caperoon*, 190 A.3d 1230, 1243 (Pa. Super. 2018) (citation omitted).

With regard to issues two and four, Buyer's expert witness concluded that water infiltration, not termites as alleged by Sellers, was the cause of damage to the Property's walls and that the way to remedy the damage was to reframe the walls and entirely replace the masonry. *See* N.T. 10/7/20, at 12-15, *id.*, 10/6/20, at 221-22 (expert testifying sill plate, joists of house, and studding in front walls were "rotted"); *id.* at 22-23 (expert testifying no vapor barrier in front walls to keep moisture from seeping through exterior stone). Buyer's contractor testified that a "reasonable and appropriate" cost to reframe the front walls would be $50,940.00 ($15,260.00 (bedrooms walls) and $35,680.00 (family room/garage wall)). *Id.*, 10/7/20, at 20-21; *see* Plaintiff's Exhibit 15, at 1-2.

With regard to issue number three, Mr. McDonald admitted at trial that, in 2013, he opened up the front wall to replace the lower portion of drywall and, in the process, "sistered" new studs to the old studs. *Id.*, 10/7/20 at 67-68; *id.* at 85 (Seller testifying inside corner bedroom wall, "There was a stud that was a little chewed up[.]"). Mr. McDonald also testified that the drywall inside the wall was "cracked and falling down." *Id.*, 10/8/20, at 72-73. Finally, Mr. McDonald testified that when the Property's garage was

converted to a family room, he observed the week-long construction process "about three or four times." *Id.*, 10/7/20, at 78.

With regard to Sellers' final issue, we note that the UTPCPL provides for a private cause of action.

> The UTPCPL is Pennsylvania's consumer protection law, which serves the purpose of protecting the public from unfair or deceptive business practices. *DeArmitt* [*v. N.Y. Life Ins. Co.*, 73 A.3d 578, 587 (Pa. Super. 2013)]. The UTPCPL explicitly authorizes a private cause of action for anyone who purchases goods primarily for personal, family, or household purposes and "suffers any ascertainable loss of money or property" as a result of any person employing an unlawful method, act, or practice. 73 P.S. §201-9.2(a).
>
> In order to bring a private cause of action under the UTPCPL, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, [] 854 A.2d 425, 438 (Pa. 2004) (emphasis added). Strict technical privity is not required to bring a cause of action under the UTPCPL. *Valley Forge Towers Smith Condominium v. Ron-Ike Foam Insulators, Inc.*, [] 574 A.2d 641, 647 (Pa. Super. 1990).

*Zajick v. Cutler Grp., Inc.*, 169 A.3d 677, 680 (Pa. Super. 2017).[14]

---

[14] Specifically, section 201-3 of the UTPCPL creates a private cause of action in the following circumstances:

> (a) **Any person who purchases** or leases **goods** or services **primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages** or one hundred dollars ($ 100), whichever is greater. The court may, in its discretion, award up to three times the

*(Footnote Continued Next Page)*

After examining the parties' briefs, the issues on appeal, and relevant statutory and case law, we affirm the court's judgment. In doing so, we rely upon the thorough and well-written opinions authored by Judge Baldi. **See** Pa.R.A.P. 1925(a) Opinion, 6/10/22, at 5-10; Trial Court Opinion, 7/1/21.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2023

---

> actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper. **The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.**

73 P.S. § 201-9.2(a) (emphasis added). Under section 3 of the UTPCPL "unlawful acts or practices" are defined as "unfair methods of competition and unfair or deceptive acts of practices in the context of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act[.]" **Id.** at § 201-3. The UTPCPL prohibits "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." **Id.** at 201-2(4)(xxi). **See Gregg v. Ameriprise Fin., Inc.,** 245 A.3d 637 (Pa. 2021) (UTPCPL's 1997 amendment created "catch all" provision that expanded its scope to cover not just "fraudulent" but also "deceptive" conduct; statute requires neither intent to deceive nor negligence with regard to effect of misrepresentation).

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

CIVIL ACTION – LAW

| | | |
|---|---|---|
| KATHLEEN NICHOLS-GOULD<br>*Plaintiff,* | : | |
| | : | |
| | : | |
| vs. | : | No.   2018-06816 |
| | : | |
| CHARLES and SUSANNE MCDONALD (h/w) | : | |
| *Defendants.* | : | |

## OPINION

### I.    INTRODUCTION

Charles and Susanne McDonald (hereinafter, "Appellants")[1] filed a Notice of Appeal from this Court's Decision and Order, dated July 1, 2021, in which the undersigned found in favor of Kathleen Nichols-Gould (hereinafter, "Appellee") and against Appellants after a three-day nonjury trial before the undersigned. This Court's Opinion is being filed as required by Pennsylvania Rule of Appellate Procedure 1925(a) and in compliance therewith. For the reasons stated below, the undersigned respectfully suggests the instant Appeal should be denied.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

Appellants purchased the property located at 3912 Street Road in Buckingham Township, Bucks County, Pennsylvania (hereinafter, "the Property") in October 2005. Notes of Testimony ("N.T.") 10/6/2020, 31:20-22; 160:13-15; N.T. 10/8/2020, 15:15-17; P-1 ¶ 2(C); D-25 ¶ 2(C).[2] Appellants spent thousands of dollars renovating the Property during their ownership, making extensive improvements, some of which altered or changed the structural integrity of the house. N.T. 10/7/2020, 42:1-21; 43:14 – 44:9; N.T. 10/8/2020, 53:13-18; P-1 ¶ 8; D-25 ¶ 8. Among the repairs performed by Appellants was the removal of the lower portion of the wall in the corner

---

[1] Mrs. McDonald adopted the testimony of Mr. McDonald at trial. N.T. 10/7/2020, 99:16-18.

[2] P- refers to Plaintiff's Trial Exhibits and D- refers to Defendants' Trial Exhibits.

N.B. It is the responsibility of all parties to notify all interested parties of the content of this order/action

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

bedroom in 2013. N.T. 10/7/2020, 67:11-25; 68:1-19; 87:1-20. Appellants admitted that they noticed deterioration of the studs and gypsum board inside the wall at that time. N.T. 10/7/2020, 67:11-25; 68:1-19; 87:1-20.

Appellee offered to purchase Appellants' home for $480,000.00 after they listed it for sale in 2018. N.T. 10/6/2020, 39:14-15; N.T. 10/7/2020, 40:15 – 41:6; N.T. 10/8/2020, 70:23 – 71:3; P-2. As part of the parties' real estate transaction, Appellants prepared a Real Estate Seller's Disclosure Statement ("Disclosure Statement"). N.T. 10/6/2020, 31:11-16; P-1; D-25. In Paragraph 7 of the Disclosure Statement, Appellants indicated that they "were not aware of any past or present movement, shifting, deterioration, or other problems with walls, foundations, or other structural components . . . " P-1 ¶ 7(A)-(C); D-25 ¶ 7(A)-(C).

After settlement, Appellee noticed several significant problems with the Property, including a deteriorated and failing front wall on the main level. N.T. 10/6/2020, 70:5 – 89:6; P-9 to P-11. In light of the issues that Appellee observed on the Property, and the repairs that were necessary to correct those issues, Appellee filed a Complaint against Appellants alleging violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")[3] and the Pennsylvania Real Estate Sellers' Disclosure Law ("RESDL")[4].

Subsequently, a three-day bench trial was held before the undersigned from October 6, 2020, through October 8, 2020, after which time the undersigned issued a Memorandum Decision and Order finding in favor of Appellee and against Appellants on Appellee's claims. The Court's 25-page Decision was issued July 1, 2021. It contained 61 Findings of Fact, a substantial number of which were stipulated to by the parties. The Decision outlines and explains the Court's

---

[3] 73 P.S. §§ 201-1 *et seq.*
[4] 68 Pa.C.S. §§ 7311 *et seq.*

2

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

reasoning for the award that was entered. The parties stipulated at trial that fee petitions would be presented via post-trial submissions. N.T. 10/7/2020, 8:6-12. On March 7, 2022, the undersigned issued a Memorandum Decision and Order awarding $14,838.50 in attorney's fees and $3,680.80 in costs to Appellee. Appellants filed their Notice of Appeal on April 12, 2022, and this Court directed Appellants to file a Statement of Matters Complained of On Appeal on April 13, 2022.

## III. STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On May 4, 2022, Appellants filed their Concise Statement of Matters Complained of On Appeal, which are set forth *verbatim* below:

1. The Court erred in finding that Plaintiff proved by preponderance of the evidence that Defendants failed to properly disclose the condition of the front walls.

2. To the extent the Court found that Defendants were aware of and failed to disclose moisture in the front walls, the Court erred in finding that Plaintiff proved by a preponderance of the evidence that the alleged moisture in the front walls predated the closing and that Defendants were aware of the alleged moisture or alleged condition of the walls.

3. The Court erred in finding that "Based on Mr. McDonald's replacement of the drywall in the corner bedroom, these statements were either false, deceptive, or misleading."

4. The Court erred by awarding $50,940.00 for the front walls. That figure improperly included many components that were never present at the property while Defendants owned it, as well as components that were not damaged/deteriorated when Plaintiff took ownership. By way of example only, inter alia, the figure improperly included a new ceiling, even though there was no evidence of any problems with the ceiling; it improperly included new walls that are not part of the front walls; it improperly included the installation of a new heating system; it improperly included a "rebuild [of] electric panel closet;" it improperly included the cost to raise the wall above grade. By way of further example on, inter alia, although this Court properly found that "The Plaintiff has not proven the deteriorated masonry on the front of the house is a material defect for which she can recover," this Court nonetheless improperly awarded Plaintiff the costs to remove and replace (with siding) the masonry wall. In short, the Court improperly found that Defendants were responsible to provide Plaintiff with a home that is substantially newer and substantially improved over the 50-year-old home that Defendants' owned, offered for sale and sold to Plaintiff.

5. The Court erred in awarding Plaintiff attorney fees and costs.

6. The Court erred in awarding Plaintiff $14,838.50 in fees and $3,680.00 in costs. To the extent Plaintiff was entitled to any fees or costs, the amounts awarded by the Court are excessive, not supported by the evidence and not supported by the law.

7. The Court erred in applying the Unfair Trade Practices and Consumer Protection Law (UTPCPL) to this case because Defendants are individuals that were and are not in the business of selling homes. Defendants were and are not "vendors" or in the business of selling anything. Defendants are not in the business of dealing with other consumers. Indeed, Defendants are typical consumers who were selling their residence like average people do every day.

8. Even if the UTPCPL is applicable, this Court erred in holding that Defendants violated the UTPCPL.

9. Even if the UTPCPL is applicable, this Court erred in holding that Defendants engaged in fraudulent and deceptive conduct.

10. Even if the UTPCPL is applicable, this Court erred in holding that Plaintiff may recover up to three times actual damages.

11. This Court erred in holding that Defendants violated the Real Estate Seller Disclosure Law.

## IV.   **DISCUSSION**

For ease of discussion, this Court will consolidate and address Appellants' arguments pertaining to Appellants' knowledge of the moisture damage in the front walls first, followed by the amount of Appellee's award, and then by the application of the UTPCPL. The Court will conclude with a discussion of the application of the RESDL.

### A.  Standard of Review

The Court, sitting as finder of fact in a nonjury trial, "is permitted to accept all, part, or none of the testimony, and [has the] exclusive province to resolve conflicts in that testimony." Haan v. Wells, 103 A.3d 60, 72 (Pa. Super. 2014). As the Pennsylvania Superior Court has stated,

> "[the appellate court's] role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial judge in a non-jury case must be given the same weight and

effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, [the appellate court's] standard of review demands that [the court] consider the evidence in a light most favorable to the verdict winner.

Levitt v. Patrick, 976 A.2d 581, 588-89 (Pa. Super. 2009) (citing Baney v. Eoute, 784 A.2d 132, 135 (Pa. Super. 2001)). Moreover, "[the] award [of] attorneys' fees and costs incurred in bringing an action are within the discretion of the trial court, and [appellate courts] will not reverse a trial court's decision on the matter in the absence of an abuse of discretion." First Pennsylvania v. National Union, 580 A.2d 799, 803 (Pa. Super. 1990).

B. Appellants' Knowledge of Moisture Damage in the Front Walls

The Court determined that Appellants were aware of the moisture damage and deterioration in the front walls when filling out the Disclosure Statement in 2018, yet failed to disclose same, because Appellants admitted that they opened the wall in the corner bedroom in 2013 and noticed deterioration of the studs and gypsum board at that time. N.T. 10/7/2020, 67:11-25; 68:1-19; 87:1-20. Appellants admitted that the inside of the wall in the corner bedroom appeared similar in 2013 to what Appellee observed in 2018 when she re-opened the same wall. N.T. 10/8/2020, 72:22-25; 73:1-3. This was specifically discussed in the Court's written Decision entered July 1, 2021, a copy of which is attached hereto as Exhibit "A" and incorporated herein by reference.

While Appellants attributed the deterioration that they observed solely to termite damage or age, the experts who presented testimony at trial regarding the corner bedroom all agreed that there was moisture damage in the walls, including Appellants' own expert, Herbert Scott. N.T. 10/6/2020, 221:19-25; N.T. 10/7/2020, 22:9-23; 68:7-16; 158:20-25; 159:1. Indeed, Mr. Scott testified that moisture damage likely preceded any termite damage as termites need moisture to survive. N.T. 10/7/2020, 161:3-8; 175:18-24.

5

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

Appellee's expert, Michael Lohman, testified that the interior of the walls in the corner bedroom had already begun to rot and become covered in mold when Appellants opened the wall in 2013. N.T. 10/7/2020, 36:1-4. Mr. Lohman further testified that "[a]nyone can look at black mold and see that it is obviously black mold" and that "anyone that had general common sense . . . would [have] remove[d] any of the rotted wood that had mold on it" rather than sistering the studs and sealing off the wall. N.T. 10/7/2020, 37:2-14.

This Court found that Mr. Lohman's testimony that the moisture damage and deterioration in the corner bedroom wall was obvious to Appellants in 2013 was credible, and that Appellants' testimony to the contrary was implausible. Accordingly, Appellants' failure to disclose the moisture damage and deterioration in the corner bedroom wall on the Disclosure Sheet that they prepared and presented to Appellee in 2018 was false, deceptive, and misleading, and in violation of the UTPCPL and RESDL, as discussed in Sections IV(D) and IV(E) below.

## C. Amount of Appellee's Award

The Court, sitting as finder of fact in this nonjury trial, accepted the testimony of Appellee's witness, Thomas Gavin, that there was deterioration on the interior of front walls, including rotting studs, moist insulation, and deteriorating gypsum board, which had a significant adverse impact on the value of the Property, evidenced by the cost of replacing such walls. Mr. Lohman confirmed the reasonableness of the cost of the repairs performed by Mr. Gavin at trial. N.T. 10/7/2020, 20:13 – 21:12. The Court's award of $50,940.00 for the repairs that were necessary were based upon Mr. Gavin's repair estimates. This was also explained in the Court's Decision, a copy of which is attached hereto.

The Court accepted the witnesses' testimony and did not award all costs listed in the Estimate, but rather focused on line items. It should be noted that the Court had the discretion to

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

triple the damages but chose not to do so. Any argument, or suggestion that a lesser amount of damages should have been awarded can at best be characterized as "ungrateful". Appellants failed to disclose damage in the walls. The award entered is remedial and should cover all of Appellee's costs associated with Appellants' wrongdoing. Under the law, to ensure that all reasonable costs are awarded, the Court is authorized to issue three times the amount of the damage. The award could have been $150,000.00.

Reasonable attorneys' fees are recoverable for actions brought under the UTPCPL. See Boehm v. Riversource Life Ins. Co., 117 A.3d 308, 335 (Pa. Super. 2015); 73 P.S. § 201-9.2(a). In determining an appropriate attorneys' fee award, courts are instructed to consider:

> "(1) [t]he time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) [t]he customary charges of the members of the bar for similar services; (3) [t]he amount involved in the controversy and the benefits resulting to the clients from the services; and (4) [t]he contingency or certainty of the compensation."

Boehm, 117 A.3d at 335 (citations omitted). Moreover, "there should be 'a sense of proportionality between an award of damages [under the UTPCPL] and an award of attorney's fees,' and whether plaintiff has pursued other theories of recovery in addition to a UTPCPL claim 'should [be] given consideration' in arriving at an appropriate award of fees." Id. (citing Neal v. Bavarian Motors, 882 A.2d 1022, 1031 (Pa. Super. 2005)). Other costs incurred by UTPCPL claimants are also recoverable under the plain language of the statute. Fazio v. Guardian Life Ins. Co. of Am., 62 A.3d 396, 402 (Pa. Super. 2012) (citing 73 P.S. § 201-9.2(a)).

As discussed in Section IV(D) below, the UTPCPL applies to Appellants' conduct in this case. The undersigned issued a detailed Memorandum Decision and Order laying out its reasoning for the award of Appellee's attorney's fees and costs on March 7, 2022, a copy of which is attached hereto as Exhibit "B". Appellants failed to articulate any support for their contention that the

amount awarded to Appellee in that Order was excessive, not supported by the evidence and not supported by the law. Therefore, it is respectfully submitted that the amount of fees awarded by the undersigned to Appellee was not an abuse of discretion and should be upheld on appeal.

D. Application of the UTPCPL

The UTPCPL provides:

> "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater."

73 P.S. § 201-9.2(a). Among the unfair or deceptive acts or practices enumerated in the UTPCPL is a catchall provision which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4)(xxi). Courts have recognized that the UTPCPL is a remedial statute which is designed to protect consumers from fraud and unfair or deceptive business practices. Boehm, 117 A.3d at 322. Thus, the statute is to be liberally construed, and the preponderance of the evidence standard applies to claims arising thereunder. Id.

The clear and unambiguous language of the UTPCPL provides that "the court may, it its discretion, award up to three times the actual damages sustained." Schwartz v. Rockey, 932 A.2d 885, 890 (Pa. 2007); Metz v. Quaker Highlands, 714 A.2d 447, 450 (Pa. Super. 1998); 73 P.S. § 201-9.2(a). Moreover, the Pennsylvania Supreme Court has held that the award of treble damages under the UTPCPL is "not to be closely constrained by the common-law requirements associated with the award of punitive damages" but may be "reviewed by the appellate courts for rationality." Schwartz, 932 A.2d at 898.

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Elizabeth Schecter

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Elizabeth Schecter

The UTPCPL applies to residential real estate transactions, even when the seller is an individual. Growall v. Maietta, 931 A.2d 667, 676 (Pa. Super. 2007) (finding that "[t]here is no question that the purchase or lease of a home, condominium, or apartment for residential purposes comes under the protections of the UTPCPL" even when the sellers were individuals) (citing Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641, 645 (Pa. Super. 1990)). Appellants offer no legal support for their contention otherwise.

Based upon the testimony presented at trial, this Court found that Appellants were aware of the moisture damage and deterioration in the front walls and failed to disclose same on the Disclosure Statement that Appellants prepared in 2018. Appellants' conduct was deceptive and caused Appellee's confusion or misunderstanding of the extent of repairs that were necessary on the Property. Accordingly, this Court correctly concluded that Appellants violated the UTPCPL, awarded damages for same and reasonable fees to Appellee as outlined in Section IV(C) above.

It should be noted that the Court could have entered treble damages but chose not to do so. The Court's calculation of damages was done carefully with the intent to ensure that all repairs necessitated by the Appellants' wrongdoing were covered. If there was some specific item that Appellants wish to challenge, the Court has little sympathy for same, based upon the fact that the Court chose not to triple the costs of Appellee's repairs.

E. Application of the RESDL

The RESDL is a remedial statute that was designed to address the very issues presented in this case. Under the RESDL, sellers are required to disclose all material defects and not to make any statements that they know are false or misleading. Medlock v. Chilmark Home Insps., LLC, 195 A.3d 277, 289 (Pa. Super. 2018) (citing 68 Pa.C.S.A. § 7308). A material defect is defined as "[a] problem with a residential real property or any portion of it that would have a significant

adverse impact on the value of the property or that involves an unreasonable risk to people on the property[.]" Milliken v. Jacono, 60 A.3d 133, 138 (Pa. Super. 2012) (citing 68 Pa.C.S.A. § 7102 in pertinent part).

As discussed in Section IV(B) above, the Court concluded that Appellants knew about the moisture damage and deterioration in the corner bedroom wall as early as 2013 and did not disclose same to Appellee on the Disclosure Sheet that Appellants prepared in 2018. N.T. 10/7/2020, 67:11-25; 68:1-19; 87:1-20; P-1 ¶ 7(A)-(C); D-25 ¶ 7(A)-(C). Based upon the testimony presented at trial, this Court also concluded that the moisture damage in the front walls was a material defect that should have been disclosed.

Mr. Lohman testified that the interior of the front walls was rotting, falling apart, and covered in black mold, which would have been obvious to Appellants in 2013, and which had a significant adverse impact on the value of the Property and created an unreasonable risk to inhabitants of the Property. N.T. 10/7/2020 at 12:11 − 13:1-10; 19:4-21; 27:1-5; 36:1 − 37:24. Accordingly, it is respectfully submitted that the Court properly found that Appellants' failure to disclose the moisture damage and deterioration in the front wall of the corner bedroom violated the RESDL.

10

## CONCLUSION

It is respectfully submitted that each of the alleged errors raised on appeal have been addressed by this Court, and that this Court did not err in its findings. The undersigned's Decision and Order entered on July 1, 2021 properly found in favor of Appellee and against Appellants on the issues that were raised by Appellants in this Appeal. Thus, the instant Appeal should be denied.

BY THE COURT:

6/10/22
DATE

ROBERT O. BALDI, J.

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

# Exhibit "A"

Case: 2018-06816-0089 Receipt: P-0000000000000000 Request of: Court of Buckingham on 06/29/2020 at 2:30 PM. Fee: $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

E-Filed by: Elizabeth Schecter

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| KATHLEEN NICHOLS-GOULD,<br>*Plaintiff* | : : : | |
| v. | : : | 2018-06816 |
| CHARLES P. McDONALD, JR. and<br>SUSANNE McDONALD,<br>*Defendants* | : : : | |

## DECISION

The Parties appeared before the undersigned for a trial from October 6, 2020 through October 8, 2020. This Decision is based upon the evidence, arguments, exhibits, and testimony presented at trial, along with the submissions of the Parties thereafter. This Court reserves the right to supplement this Decision with additional facts and legal authority should an appeal be filed.

## I. FINDINGS OF FACT

### A. Defendants' Ownership of the Property

1. The Defendants, Charles P. McDonald, Jr. and Susanne McDonald, purchased property at 3912 Street Road, in Buckingham Township (the "Property") in October 2005. Trial Tr. vol. I, 31:20-22, 160:13-15; Trial Tr. vol. III, 15:15-17; P-1 ¶ 2(C); D-25 ¶ 2(C).[1]

2. Mrs. McDonald adopted the testimony of Mr. McDonald. Trial Tr. vol. II, 99:16-18.

3. The Defendants spent thousands of dollars and countless hours renovating the home during their ownership, making extensive improvements, some of which altered or changed the structural integrity of the house—converting the garage to a family room, removing a

---

[1] References to "P-__" refer to Plaintiff's trial exhibits. References to "D-__" refer to Defendants' trial exhibits.

1

N.B. It is the responsibility of all parties to notify all interested parties of the content of this order/action PURSUANT TO PA. R. C. P. 236.

THIS ORDER/JUDGMENT WAS DOCKETED AND SENT ON 07/02/2021

dividing wall, and installing a wood burning stove. Trial Tr. vol. II, 42:1-21, 43:14-44:9; Trial Tr. vol. III, 53:13-18; P-1 ¶ 8; D-25 ¶ 8.

4. The Defendants made changes to the basement and crawl space:

   a. On approximately three occasions during the Defendants' ownership of the Property, about one quarter of an inch of water infiltrated the basement after heavy rains. Trial Tr. vol. II, 51:10-19; Trial Tr. vol. III, 27:17-21.

   b. The Defendants installed a second sump pump in 2011 and no longer had issues with water in the basement. Trial Tr. vol. II, 51:10-14, 80:21-25; Trial Tr. vol. III, 27:22-28:19.

   c. Mr. McDonald occasionally saw water in the crawl space. Trial Tr. vol. III, 29:24-25, 30:24-31:14.

   d. The basement was a "wet basement." Trial Tr. vol. II, 84:16-17; Trial Tr. vol. III, 29:17-18.

5. The Defendants made changes to the yard:

   a. Prior to hiring Dougherty Landscaping in 2007 to install a swale on the Property, the septic system failed at least three times due to the drain field overflowing. Trial Tr. vol. II, 64:17-66:8; P-22.

   b. The swale diverted water away from the septic system's absorption area and toward the front of the house in a side yard, but it did not stop the septic system from failing. Trial Tr. vol. II, 64:17-23, 66:9-21.

   c. The Defendants installed a sand-mound septic system around 2009-2010 that corrected any septic issues on the Property. Trial Tr. vol. II, 82:11-21.

6. The Defendants made changes to the front bedroom:

2

a. In 2013, the Defendants replaced the lower part of the drywall in the corner bedroom because there was a large crack in the sheetrock. Trial Tr. vol. II, 67:11-22, 86:6-23; Trial Tr. vol. III, 72:4-8.

b. The Defendants sistered studs together in the wall and noticed that the gypsum board was cracked and falling down, but they did not replace it. Trial Tr. vol. II, 68:4-19; Trial Tr. vol. III, 72:4-8.

c. At that time, the stud "was a little chewed up," directly above a portion of the basement where there was termite damage. Trial Tr. vol. II, 85:19-21, 88:10-13; Trial Tr. vol. III, 45:15-25, 46:1-2; D-42.

7. The Defendants converted the garage into a family room:

a. The Defendants hired a contractor, Dave Will Do It, to do the electrical work, which involved opening the walls and installing new drywall. Trial Tr. vol. II, 77:12-23.

b. The contractor removed the garage door, framed the new wall with windows, and installed sheetrock. Trial Tr. vol. III, 48:19-24.

c. The Defendants did not obtain permits, inspections, or approvals for the conversion. Trial Tr. vol. II, 75:24-76:5.

d. The Defendants installed tiling on the floor as part of the conversion, but they did not first level the floor. Trial Tr. vol. II, 76:6-11. They knew the floor was not level when they installed the tiles. Trial Tr. vol. II, 96:7-10; Trial Tr. vol. III, 51:2-13.

e. The Defendants were aware of some cracks in the tiles, and some of the cracks were visible in the MLS listing photographs. Trial Tr. vol. II, 76:12-77:2, 93:24-95:3; P-27.

3

f. The Defendants repaired some of the tiles. Trial Tr. vol. II, 94:15-20; Trial Tr. vol. III, 52:7-12.

8. The Defendants installed slate tile on the front porch, but they did not level the surface or prepare it first. Trial Tr. vol. II, 70:24-71:5, 72:14-18; P-7.

9. The Defendants made repairs to the split-rail fence on many occasions over the years, using metal braces or joinder plates, sometimes even replacing the entire rail. Trial Tr. vol. II, 74:11-18.

10. The Defendants did not make any repairs to the exterior of the home. Trial Tr. vol. II, 71:9-11.

**B. The Sale of the Property**

11. The Defendants were selling the Property because Mr. McDonald developed malignant melanoma and could no longer spend time in the sun; the Property required a significant amount of outdoor maintenance. Trial Tr. vol. III, 16:5-11.

12. At the time of sale, the house was approximately forty-nine (49) years old. D-23.

13. The Plaintiff, Kathleen Nichols-Gould, first visited the Property in March 2018. Trial Tr. vol. I, 28:23-29:19.

14. The Plaintiff visited the Property several times: March 11, 2018; March 16, 2018; March 24, 2018; and April 27, 2018. Trial Tr. vol. III, 60:22-61:19.

15. When the Plaintiff first visited, the house was fully furnished, there was snow on the ground, and there was personal property against the walls in the basement. Trial Tr. vol. I, 30:2-11; P-27; D-1 to D-22.

16. The Plaintiff made an offer on the Property which the Defendants immediately accepted. Trial Tr. vol. II 40:15-41-6; Trial Tr. vol. III, 70:23-71-3.

4

17. The purchase price of the Property was $480,000. Trial Tr. vol. I, 39:14-15; P-2.

18. The Plaintiff signed an Agreement of Sale (with certain contingencies) with the Defendants for the purchase of the Property on March 11, 2018. Trial Tr. vol. I, 39:7-13; Trial Tr. vol. III, 60:1-15; P-2; D-26.

19. The Plaintiff hired a home inspection company to conduct an inspection of the Property. Trial Tr. vol. I, 39:16-18.

20. The inspection was done on March 16, 2018. Trial Tr. vol. III, 61:20-23.

21. The home inspection company issued an Inspection Report, dated March 16, 2018, which indicated that structural components "appear functional." Trial Tr. vol. III, 62:24-63:15; D-27 § 3.

22. Further, the Report stated that everything "appeared functional" in the interior except for the steps, stairways, balconies, and railings, which Mr. McDonald subsequently fixed. Trial Tr. vol. III, 63:16-64:2; D-27 § 9.

23. The Report did not identify any of the material defects that are claimed in this case. Trial Tr. vol. I, 138:2-5; D-27.

24. After receiving the Report, the Plaintiff requested repairs to the chimney and radon remediation. Trial Tr. vol. I, 39:19-23.

25. There was an adjustment in the purchase price by $3,500.00, and some work was done to correct the problems identified by the Report. Trial Tr. vol. I, 154:20-155:23; Trial Tr. vol. III, 65:1-66:8.

26. The sale was originally supposed to occur on May 17, 2018, but this was moved up to April 30, 2018. Trial Tr. vol. 1, 8:13-14, 40:12-19; Trial Tr. vol. III, 67:13-70:22; P-2; D-26.[2]

---

[2] It is unclear which party needed to move the date up. Trial Tr. vol. III, 67:13-70:22. The Court, however, finds that this is not a controlling factor.

5

## C. The Seller's Disclosure Statement

27. On February 22, 2018, the Defendants signed a Seller's Property Disclosure Statement (the "SDS"). Trial Tr. vol. I, 31:11-16; P-1; D-25.

28. Plaintiff reviewed the SDS and relied upon the representations of the SDS when deciding to purchase the Property. Trial Tr. vol. I, 31:23-32:3, 38:21-24.

29. On March 11, 2018, the Plaintiff signed the SDS and acknowledged receipt of it. Trial Tr. vol. I, 38:19-24, 146:1-154:13; D-25.[3]

30. This was the same day the Plaintiff signed the Agreement of Sale. P-2; D-26.

31. The SDS provides that the Sellers (the Defendants) were obligated to complete the form:

> The undersigned Seller represents that the information set forth in this disclosure statement is accurate and complete to the best of Seller's knowledge. Seller hereby authorizes the Listing Broker to provide this information to prospective buyers of the property and to other real estate licensees. SELLER ALONE IS RESPONSIBLE FOR THE ACCURACY OF THE INFORMATION CONTAINED IN THIS STATEMENT.

P-1 p. 10; D-25 p. 10.

32. The SDS provides that the Buyer (the Plaintiff) acknowledged receipt of it:

> The undersigned Buyer acknowledges receipt of this Disclosure Statement. Buyer acknowledges that this Statement is not a warranty and that, unless stated otherwise in the sales contract, Buyer is purchasing this property in its present condition. It is Buyer's responsibility to satisfy himself or herself as to the condition of the property. Buyer may request that the property be inspected, at Buyer's expense and by qualified professionals, to determine the condition of the structure and its components.

---

[3] The Plaintiff's copy of the SDS does not include the Plaintiff's signature. P-1. Her signature is only on Defendants' copy. D-25. *See* Trial Tr. vol. I, 32:4-6. There was some dispute at trial regarding when the Plaintiff signed the SDS, but there was no dispute that she received it prior to signing the Agreement of Sale, Trial Tr. vol. I, 31:2-4, 28:19-24, and prior to final settlement, Trial Tr. vol. I, 135:7-8, 213:11-16. The Court finds the date of signing is irrelevant to the claims asserted because the Plaintiff credibly testified to relying upon the representations of the SDS prior to finalizing the sale. Trial Tr. vol. I, 32:1-3.

P-1 p. 10; D-25 p. 10.

33. The SDS provides the definition of a "material defect" in two locations: (1) in the background section titled "Information Regarding the Real Estate Seller Disclosure Law," and (2) in the disclosure section titled "Miscellaneous—Additional Material Defects." P-1 p. 1, ¶ 20(D); D-25 p. 1, ¶ 20(D). It has two elements:

> A material defect is a problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

P-1 p. 1, ¶ 20(D); D-25 p. 1, ¶ 20(D); Trial Tr. vol. II, 109:20-22.

34. There was no evidence that either party did not comprehend or understand the language of the SDS.

35. The following sections of the SDS are relevant to the claims in this case:

a. Paragraph 5 asks about sump pumps and water infiltration in the basements and crawl spaces. The Defendants said the Property has two sump pits and two sump pumps—both of which have run and are in working order. P-1 ¶ 5(A); D-25 ¶ 5(A). With respect to water infiltration, the Defendants were aware of water leakage, accumulation, or dampness within the basement or crawl space, and they were aware of repairs or attempts to control the water or dampness problem. P-1 ¶ 5(B); D-25 ¶ 5(B). In their explanation to the "yes" answers, Defendants indicated "2nd sump pump installed" and "crawl space may get some moisture during heavy rainfall 3/4 inches." P-1 ¶ 5; D-25 ¶ 5. *See* Trial Tr. vol. I, 32:10-33:12, 161:4-162:7; Trial Tr. vol. II, 48:9-13; Trial Tr. vol. III, 42:1-25.

7

b. With respect to flooding and drainage on the Property, the Defendants maintained flood insurance, and they were not aware of any past or present draining or flooding problems affecting the Property, nor were they aware of any drainage or flooding mitigation on the Property. P-1 ¶ 18(A); D-25 ¶ 18(A). But, the Defendants were aware of a man-made feature that temporarily or permanently conveys or manages storm water, and in the explanation for this "yes" answer, the Defendants wrote "small swale." P-1, ¶ 18(A); D-25, ¶ 18(A); Trial Tr. vol. I, 35:7-38:6; Trial Tr. vol. II, 64:3-12.

c. In Paragraph 7, the Defendants were not aware of (1) any past or present movement, shifting, deterioration, or other problems with walls, foundations, or other structural components; (2) any past or present problems with driveways, walkways, patios, or retaining walls on the Property; and (3) they were not aware of any past or present water infiltration in the house or other structures, other than the roof, basement, or crawl spaces. P-1 ¶ 7(A)-(C); D-25 ¶ 7(A)-(C). *See* Trial Tr. vol. I, 33:13-34:21.

d. In Paragraph 8, Defendants made additions, structural changes, or other alterations to the Property including converting the garage into a family room in 2007, removing a dividing wall between the living room and dining room in 2015, and adding a woodburning stove in the family room in 2011. P-1 ¶ 8; D-25 ¶ 8; Trial Tr. vol. I, 184:6-14; Trial Tr. vol. III, 48:12-18, 53:13-54:8. The addition of the wood burning stove was the only addition/alteration for which the Defendants obtained a permit and final inspection/approval. P-1 ¶ 8; D-25 ¶ 8. *See* Trial Tr. vol. I, 34:22-35:6.

8

e. Under Paragraph 20, for "miscellaneous" disclosures, the Defendants answered "no" to the question of whether they were "aware of any material defects to the property, dwelling, or fixtures which are not disclosed elsewhere on this form." P-1 ¶ 20(D); D-25 ¶ 20(D). *See* Trial Tr. vol. I, 38:7-18; Trial Tr. vol. II, 74:7-10.

36. Further, the Defendants made the following relevant disclosures:

a. They possessed no expertise in contracting, engineering, architecture, environmental assessment or other areas related to the construction and conditions of the Property and its improvements. P-1 ¶ 1(A); D-25 ¶ 1(A). *See* Trial Tr. vol. I, 160:4-12; Trial Tr. vol. III, 39:9-15.

b. They were occupying the Property as of February 22, 2018. P-1 ¶ 2(A); D-25 ¶ 2(A).

c. Termites had previously affected the Property, and the Property was treated for this problem when the Defendants purchased it in 2005. P-1 ¶ 6; D-25 ¶ 6; Trial Tr. vol. I, 187:21-188:8; Trial Tr. vol. II, 89:25-90:21; Trial Tr. vol. III, 45:15-46:10.

**D. Problems and Repairs**

37. After settlement, the Plaintiff discovered several problems with the Property that she asserts are material defects that the Defendants failed to disclose:

a. Flooding in the basement and adjoining crawlspace, Trial Tr. vol. I, 42:17-61:7; P-3 to P-5;

b. Flooding in the yard, Trial Tr. vol. I, 63:16-70:4; P-11A;

c. A deteriorated and failing front wall on the main level (affecting both front bedrooms and the family room), Trial Tr. vol. I, 70:5-89:6; P-9 to P-11;

d. Cracked floor tiles in the family room, Trial Tr. vol. I, 97:17-103:3; P-6; P-27;

9

    e. An improperly installed front porch, Trial Tr. vol. I, 89:8-92:15; P-7;

    f. Deteriorated masonry on the front of the house, Trial Tr. vol. I, 92:16-97:16; P-8; and

    g. A failing split-rail fence around the back of the Property, Trial Tr. vol. I, 103:4-106:3; P-11B.

38. The Plaintiff presented photographs of these problems that she took after purchasing the Property. P-4 to P-11; P-29; D-50.[4]

39. The Plaintiff had mold remediation performed in the basement, and she has a dehumidifier running twenty-four/seven in the basement. Trial Tr. vol. I, 60:12-20.

40. The Plaintiff had the concrete wall in the basement filled with cement to keep the water out. Trial Tr. vol. I, 61:1-4.

41. Scott Camburn of Urwiler & Walter, a land development, surveying, and engineering firm, testified as to the topographical survey and plan to address grading issues of the Property. Trial Tr. vol. I, 246:20-253:19.

42. Mr. Camburn prepared a proposal for a plan of action for engineering and surveying services. Trial Tr. vol. I, 247:17-3; P-16.

43. Mr. Camburn was asked to generate a plan of existing conditions, to prepare a grading plan, and to prepare an erosion control plan. Trial Tr. vol. I, 252:13-253:12; P-16.

44. Thomas Gavin was hired to do some of the work at the Plaintiff's home. Trial Tr. vol. I, 107:12-13.

---

[4] There was some discussion at trial regarding the dates the pictures were taken. On the third day of trial, the Parties submitted additional exhibits that include the dates the pictures were taken for clarification. Trial Tr. vol. III, 3:16-10:6; P-29; D-46 to D-49.

45. Mr. Gavin provided a proposal for the repairs dated November 24, 2019, which he testified was fair in value. Trial Tr. vol. I, 224:24-246:3; Trial Tr. vol. II, 20:5-12; P-15.

46. Mr. Gavin inspected the front walls in the bedrooms, the converted garage, and the exterior masonry—not the basement or the landscaping/fence. Trial Tr. vol. I, 221:8-18; P-14.

47. Mr. Gavin made various repairs including the following:

   a. Mr. Gavin raised the floor in the family room. Trial Tr. vol I, 223:5-16.

   b. Mr. Gavin reframed the interior walls and installed vinyl siding on the exterior. Trial Tr. vol. I, 223:18-20.

   c. Mr. Gavin installed new electrical. Trial Tr. vol. I, 224:3-7.

   d. Mr. Gavin removed the concrete on the front porch and poured a new slab, draining away from the house. Trial Tr. vol. I, 224:20-23.

   e. Mr. Gavin sistered the studs in the basement and fixed the ribbon board and sill plate in the basement. Trial Tr. vol. I, 60:22-25.

48. Michael Lohman was hired by the Plaintiff to inspect the house and give an opinion concerning the conditions of the house, which Plaintiff relied on when she contracted for repairs. Trial Tr. vol. I, 106:4-15.

49. Mr. Lohman is qualified as an expert in residential construction, and the Parties agreed that he was permitted to testify about his observations of the conditions of the Property and the cause of the conditions he observed. Trial Tr. vol. II, 4:18-23.

50. Mr. Lohman was also permitted to testify as to the reasonableness and necessity of the work and the costs that were incurred to fix the issues. Trial Tr. vol. II, 5:24-6:1; P-14.

51. Herbert Scott conducted a site inspection of the Property on March 6, 2019. Trial Tr. vol. II, 130:21-24.

11

52. Mr. Scott is qualified as an expert in the building science, general construction, and home inspection field. Trial Tr. vol. II, 99:20-23.

53. There was evidence of water in the basement. Trial Tr. vol. II, 9:22-12:10.

54. There was evidence of water damage in the interior walls of the bedrooms and the family room. Trial Tr. vol. I, 221:22-223:1; Trial Tr. vol. II, 12:15-16:2, 175:4-24.

55. This water damage caused rotted studs, joists, etc. in the walls of the bedrooms and the family room. Trial Tr. vol. I, 221:22-223:1; Trial Tr. vol. II, 175:14-17.

56. There was evidence of termite damage in the walls in addition to water damage. Trial Tr. vol. II, 22:12-20, 145:4-146:15, 158:20-159:1, 175:4-24.

57. Drywall with a date of 2013 was installed in the bedroom. Trial Tr. vol. II, 13:1-6; P-9.

58. The tile on the floor in the family room was cracked. The floor was not properly prepped and leveled. Trial Tr. vol. I, 223:5-16; Trial Tr. vol. II, 16:3-18:5, 162:12-21.

59. The front porch was not properly sloped away from the house. Trial Tr. vol. I, 224:20-23, Trial Tr. vol. II, 18:6-19:25, 167:13-168:17.

60. The original construction of the home, approximately fifty (50) years prior to the Plaintiff's purchase, led to problems with water in the walls and damage to the exterior masonry. Trial Tr. vol. I, 234:8-238:19; Trial Tr. vol. II, 27:24-28:12, 144:23-145:3, 148:24-149:11, 159:15-23, 165:23-166:5.

### E. Damages and Repairs

61. Plaintiff asserts that the total estimated repair for the property is $241,259.58, including work that the Plaintiff has already done and work that the Plaintiff expects to have done. P-14.

12

## II.    PROCEDURAL POSTURE

The Plaintiff filed a Complaint on November 26, 2018 asserting three counts: (I) Violation of the Real Estate Seller Disclosure Law ("RESDL"), 68 Pa.C.S. §§ 7301 et seq.; (II) Violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 et seq.; and (III) Negligence.[5] The Defendants filed an Answer, New Matter, and Counterclaim on December 28, 2018 asserting a breach of contract.[6] The Plaintiff responded on January 8, 2019. The Praecipe for a Jury Trial was filed on December 10, 2019, and the case was initially ordered on the trial list for the Trial Term beginning March 2, 2020.[7] The Parties filed Pre-Trial Memorandums on February 24, 2020.

The undersigned held a telephone conference with the Parties on September 24, 2020. One of the issues raised during this conference was whether there was a right to a jury trial for a claim asserted under the RESDL. The Parties agreed that there was no right to a jury trial for such a claim, and therefore, a waiver trial was held before the undersigned from October 6, 2020 through October 8, 2020.

At the beginning of trial, the Parties also stipulated to withdrawal of a claim concerning misrepresentation of square footage of the property. Trial Tr. vol. I, 8:2-5. And, the Parties stipulated that the request for attorneys' fees under the UTPCPL would be heard through post-trial submissions, without requiring expert testimony. Trial Tr. vol. I, 8:6-12.

---

[5] Prior to trial, the Parties stipulated to the withdrawal of Count III for Negligence—leaving only two counts, one for violation of the RESDL and the other for violation of the UTPCPL. Stipulation, Mar. 2, 2020; Trial Tr. vol. I, 7:16-20.

[6] Prior to trial, the Parties stipulated to withdrawal of the counterclaim. Stipulation, Mar. 2, 2020; Trial Tr. vol. I, 7:21-23.

[7] The case was subsequently ordered on the trial list for the Trial Term beginning April 13, 2020; the Trial Term beginning August 3, 2020; and finally, the Trial Term beginning September 28, 2020.

## III. CONCLUSIONS OF LAW

### A. RESDL, 68 Pa.C.S. §§ 7301 et seq.

There is no dispute about the applicability of the RESDL. *See* 68 Pa.C.S. § 7302; Medlock v. Chilmark Home Inspections, LLC, 195 A.3d 277, 288 (Pa. Super. 2018) (stating the RESDL "applies 'to all residential real estate transfers' except for certain types of transfers"). The purpose of the RESDL is "to protect the purchaser of real property, and the method of protection is a disclosure statement that is included within the bill that the seller has to complete so that presumably the buyer accurately knows what the seller knows about the property when the sale occurs." Medlock, 195 A.3d at 290 n.7 (quoting Phelps v. Caperoon, 190 A.3d 1230, 1245 (Pa. Super. 2018)). Further, the RESDL "protects the purchasers of real property and ensures that both parties have some parity of knowledge regarding any issues with the property." Id. (quoting Phelps, 190 A.3d at 1246).

Under the RESDL, homeowners are required to disclose material defects to the purchaser:

> Any seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of section 7304 (relating to disclosure form). A signed and dated copy of the property disclosure statement shall be delivered to the buyer in accordance with section 7305 (relating to delivery of disclosure form) prior to the signing of an agreement of transfer by the seller and buyer with respect to the property.

68 Pa.C.S. § 7303. If a seller does not know of certain information that is required to be disclosed at the time disclosure is made, "the seller may make a disclosure based on the best information available to the seller." Id. § 7306. There is no exception to the disclosure requirements. Phelps, 190 A.3d at 1238.

A material defect is defined as:

14

> A problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

68 Pa.C.S. § 7102. The SDS in this case defines a material defect with the exact same language. P-1 p.1, ¶ 20(D); D-25 p.1, ¶ 20(D). "Generally, a seller 'should only be required to reveal material defects with the actual physical structure of the house, with legal impairments on the property, and with hazardous materials located there." Phelps, 190 A.3d at 1237 (quoting Milliken v. Jacono, 60 A.3d 133, 140 (Pa. Super. 2012) (en banc) (examining 68 Pa.C.S. § 7304 and discussing the mandatory disclosures under the RESDL that deal with the actual physical structure of the house, its components, and the condition of the curtilage—Section 7304(a)(3)-(13); potential legal impairments attached to the property—Sections 7304(a)(15)-(16); and hazardous substances on the property—Section 7304(a)(14))).

There is an affirmative duty imposed upon the seller:

> The seller is not obligated by this chapter to make any specific investigation or inquiry in an effort to complete the property disclosure statement. In completing the property disclosure statement, the seller shall not make any representations that the seller or agent for the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect.

68 Pa.C.S. § 7308; Medlock, 195 A.3d at 289-90. The Pennsylvania Superior Court in Medlock discussed the disclosure requirement of the RESDL:

> [W]e do not interpret Section 7308 to limit the seller's affirmative duty to disclose only "known material defects." Rather, by its plain, unambiguous language, Section 7308 also affirmatively requires the seller, in completing the property disclosure statement, to "not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading[.]"

15

195 A.3d at 290 (quoting 68 Pa.C.S. § 7308).

"[A]ny person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this chapter shall be liable in the amount of actual damages suffered by the buyer as a result of a violation of this chapter." 68 Pa.C.S. § 7311(a). However, the seller is not liable for any errors, inaccuracies, or omissions in the SDS if (1) the seller had no knowledge of the error, inaccuracy, or omission; (2) if the error, inaccuracy, or omission "was based on a reasonable belief that a material defect or other matter not disclosed had been corrected"; or (3) the error, inaccuracy, or omission "was based on information provided by a public agency, home inspector, contractor or person registered or licensed. . . ." Id. § 7309(a). Although there may be an "as is" clause in the SDS, the "RESDL contains no exceptions to the disclosure requirements, including the presence of an 'as is' clause in an agreement to transfer residential real estate, and thus, Seller must comply." Phelps, 190 A.3d at 1238.

The Plaintiff is seeking actual damages, plus interest capped at the sales price of the property under the RESDL, 68 Pa.C.S. § 7311, because the Defendants did not disclose material defects of the Property about which they knew or had reason to know. The "actual damages" that may be awarded are "repair costs, capped by the market value of the property." Medlock, 195 A.3d at 290 (quoting Phelps, 190 A.3d at 1246). The defects that the Plaintiff asserts claims for include (1) flooding in the basement and crawl space; (2) flooding in the yard; (3) deteriorated and failing front wall on main level in the bedrooms and family room; (4) cracked floor tiles in the family room; (5) improperly installed front porch; (6) deteriorated masonry on the front of the house; and (7) failing split-rail fence. Each of these alleged material defects is discussed below.

The Court applies the definition of a material defect found in the RESDL and the SDS— "A problem with a residential real property or any portion of it that would have a significant

16

adverse impact on the value of the property or that involves an unreasonable risk to people on the property." 68 Pa.C.S. § 7102; P-1 p.1, ¶ 20(D); D-25 p.1, ¶ 20(D). The alleged material defects in this case are all related to the actual physical structure of the Property. *See* Phelps, 190 A.3d at 1237 (quoting Milliken, 60 A.3d at 140). Importantly, the seller is not liable for any errors, inaccuracies, or omissions in the SDS if (1) the seller had no knowledge of the error, inaccuracy, or omission; or (2) if the error, inaccuracy, or omission "was based on a reasonable belief that a material defect or other matter not disclosed had been corrected." 68 Pa.C.S. § 7309(a). And, the RESDL "requires the seller, in completing the property disclosure statement, to 'not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading[.]'" Medlock, 195 A.3d at 290 (quoting 68 Pa.C.S. § 7308).

### 1. Flooding in the Basement and Crawl Space

The Court does not find flooding in the basement and crawl space was a material defect for which Plaintiff can recover. The Defendants were aware of significant water in the basement on at least three occasions during heavy rains prior to installing the second sump pump, characterizing the basement as a "wet basement." The Defendants admitted that the basement flooded prior to installation of the second sump pump. The Defendants had an affirmative duty not to make any representations that they knew were false, deceptive, or misleading; they were required to disclose any known material defects. *See* 68 Pa.C.S. § 7308; Medlock, 195 A.3d at 289-90. However, the Defendants are not liable for failure to disclose a material defect if the omission of it on the SDS was based on a reasonable belief that the material defect had been corrected. *See* 68 Pa.C.S. § 7309(a). The Court finds that Defendants did not have any flooding issues after the installation of the second sump pump. The Plaintiff, although she states that she experienced flooding on multiple occasions, only provided photographs of one instance when nearly five inches of rain fell.

17

The Court finds that the Defendants reasonably believed the material defect was corrected by the addition of the second sump pump. There was no credible evidence that they experienced significant flooding in the basement after the installation of the second sump pump. The Defendants indicated on the SDS that a second sump pump was installed and that the crawl space may get some moisture during heavy rainfalls. Based on the testimony, the Court finds this disclosure was sufficient.

### 2. Flooding in the Yard

The Court does not find that flooding in the yard was a material defect for which the Plaintiff can recover. There was no evidence presented that the flooding had a significant impact on the value of the Property or that it involved an unreasonable risk to people on the Property. Neither expert provided significant testimony regarding the flooding of the lot. The Defendants admitted that a swale was installed, and that the water was redirected to the side yard area. Furthermore, there was work done replacing the septic system, which apparently fixed the problem. The Defendants even hosted a backyard wedding in May 2015, following a heavy rainstorm. Trial Tr. vol. III, 79:8-80:25; D-32 to D-36. It would have been reasonable for them to believe that there was no yard drainage issue which had a significant impact on the value of the property.

On the SDS, Defendants answered "no" they were not "aware of any past or present drainage or flooding problems affecting the property." Based on this language, asking if the Defendants were aware of "any past . . . drainage or flooding problems," one could argue that the Defendants clearly were aware of a "past" flooding problem and for that reason should have disclosed a past flooding problem on the SDS. However, as with the flooding in the basement, the Defendants reasonably believed the problem was corrected by the replacement of the septic

18

system, and therefore, the Court will not find them liable for failing to disclose past drainage problems.

### 3. Deteriorated and Failing Front Wall in the Bedrooms and Family Room

The deteriorated and failing front walls are a material defect for which Plaintiff can recover. Deterioration on the interior of the walls—rotting studs, moist insulation, deteriorated gypsum board—has a significant adverse impact on the value of property, evidenced by the cost of replacing such walls. The Defendants admit to fixing a crack in the corner bedroom, which required replacing the drywall and sistering the studs in 2013. Both experts noted that the interior walls were moist and that termites could not cause moisture damage—rather, moisture likely led to the termite problem.

When the Defendants replaced the drywall in 2013, they were able to look into the wall and see what was happening. Mr. McDonald admitted he sistered the studs because the original studs were rotted. He saw the rotted gypsum board, but he did not replace it. In 2013, the interior of the wall looked "similar" to what was shown in the Plaintiff's photographs presented at trial. The Defendants were clearly aware of the deteriorated interior walls in the bedroom. Their knowledge of this damage in at least one bedroom should have been disclosed as a material defect on the SDS. On the SDS, the Defendants indicated they were not aware of any problems with deterioration of walls or any water infiltration in the house, other than the basement or crawl space. Based on Mr. McDonald's replacement of the drywall in the corner bedroom, these statements were either false, deceptive, or misleading, and the Defendants are liable.

### 4. Cracked Floor Tiles in the Family Room

The cracked floor tiles in the family room, some of which were obvious, are a defect. It is undisputed that at least some of the cracked tiles were visible when the Plaintiff visited the property

19

prior to purchasing the home. Both she and her inspector should have seen the obvious tiles and could have checked the entire floor with little effort. Floor tiles will crack, there was no expert testimony presented suggesting a "normal useful life" of this particular structural element. This is the type of damage which purchasers of homes typically identify and then bicker with the seller over a credit at the closing. The Court does not find that the cracked tiles would have had a "significant adverse impact on the value of the property," and therefore this defect does not rise to the level of a "material defect."

The Court finds the Defendants are not liable for failing to disclose this defect. As mentioned, the purpose of the RESDL is to protect the buyer so that the buyer and the seller "have some parity of knowledge regarding any issues with the property." Medlock, 195 A.3d at 290 n.7 (quoting Phelps, 190 A.3d at 1246). Although there are no exceptions to the disclosure requirements, the Parties had some parity of knowledge regarding the cracked floor tiles because they were visible at the time of sale, and the Court does not find that cracked floor tiles would have had a significant adverse impact on the value of the property.

### 5. Improperly Installed Front Porch

The Plaintiff has not proven the improperly installed front porch is a material defect for which she can recover. It is undisputed that the front porch did not slope away from the house. Although Mr. McDonald installed the porch tile on top of the existing concrete without first leveling it, there is no evidence that the Defendants knew that there was a material defect of water pooling. There was no evidence that the Defendants ever experienced water pooling on the front porch. There is no evidence that this happened on any occasion other than when the Plaintiff took the pictures which were presented at trial. It is not likely that the improperly installed front porch led to a significant amount of deterioration in the front wall and basement. The Court finds the

20

Defendants' testimony credible that they were not aware of this alleged material defect, and therefore, they are not liable for it.

## 6. Deteriorated Masonry on the Front of the House

The Plaintiff has not proven the deteriorated masonry on the front of the house is a material defect for which she can recover. The experts concluded that the deteriorated masonry was from water infiltration due to the original construction of the home, which was typical construction for homes that were approximately fifty (50) years old. "The fact that a structural element . . . is near, at or beyond the end of the normal useful life of such a structural element . . . is not by itself a material defect." 68 Pa.C.S. § 7102. Although Mr. McDonald opened the front bedroom wall and saw the deteriorating wood and gypsum board, there was no evidence that he saw deteriorated masonry. The Court cannot assume he had knowledge of this condition and finds the Plaintiff has not proven the deteriorated masonry is a material defect for which she is entitled to recover.

## 7. Failing Split-Rail Fence

The Plaintiff has not proven the failing split-rail fence is a material defect for which she can recover. Although the Defendants were aware of the failing split rail fence, there was no evidence to support a claim that this was a material defect that adversely impacts the value of the property or involves an *unreasonable* risk to people on the property. 68 Pa.C.S. § 7102. Split-rail fences of the type on the property regularly need replacement pieces, and their "normal useful life" is quite limited.

## B. UTPCPL, 73 P.S. §§ 201-1 et seq.

The purpose of the UTPCPL is to "protect the public from unfair or deceptive business practices." Gregg v. Ameriprise Fin., Inc., 195 A.3d 930, 941 (Pa. Super. 2018) (quoting Richards

v. Ameriprise Fin., Inc., 152 A.3d 1027, 1035 (Pa. Super. 2016)). It is for consumer protection. Id. at 940.

Under the UTPCPL, "[e]ngaging in any [] fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding," is an unfair method of competition or unfair or deceptive act or practice. 73 P.S. § 201-2(4)(xxi). Such an act or practice is unlawful. Id. § 201-3. "[A]ny deceptive conduct, 'which creates a likelihood of confusion or of misunderstanding,' is actionable under 73 P.S. § 201-2(4)(xxi), whether committed intentionally (as in fraudulent misrepresentation), carelessly (as in a negligent misrepresentation), or with the utmost care (as in strict liability).'" Gregg, 195 A.3d at 939 (quoting Commonwealth v. TAP Pharm. Prods., Inc., 36 A.3d 1197, 1253 (Pa. Cmwlth. 2011)). Strict liability is imposed "on vendors who deceive consumers by creating a likelihood of confusion or misunderstanding in private, as well as public, causes of actions. Carelessness or intent, required for negligent or fraudulent misrepresentations, may be absent when perpetrating 'deceptive conduct' under 73 P.S. § 201-2(4)(xxi)." Id. (citing TAP Pharm. Prods., 36 A.3d at 1253). The purchase of a home for residential purposes is protected by the UTPCPL. Growall v. Maietta, 931 A.2d 667, 676 (Pa. Super. 2007) (citing Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641, 648 (Pa. Super. 1990)).

The UTPCPL provides for a private right to recover damages:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

22

Id. § 201-9.2. This gives the trial court discretion to award treble damages and attorneys' fees. Id.

Plaintiff is seeking up to three times actual damages, as well as attorneys' fees and costs under the UTPCPL because the Defendants engaged in "fraudulent and deceptive" conduct. At this time, the Court will only address whether to award up to three times actual damages for "fraudulent and deceptive" conduct. [8] The undersigned found that Defendants failed to disclose material defects in the deteriorated interior walls in violation of the RESDL. *See* Section III.A.3, *supra*. This constitutes a violation of the UTPCPL for which Plaintiff may recover up to three times actual damages. 73 P.S. § 201-2(4)(xxi).

## IV. DAMAGES

As mentioned, "[a] material defect is a problem with a residential real property or any portion of it that would have a *significant adverse impact on the value of the property* or *that involves an unreasonable risk to people on the property*." P-1 p. 1, ¶ 20(D); D-25 p. 1, ¶ 20(D); Trial Tr. vol. II, 109:20-22 (emphasis added).

As discussed above, Plaintiff is entitled to recover for Defendants' failure to disclose the material defect of the deteriorated interior walls in the front bedrooms and family room. *See* Section III.A.3, *supra*. Plaintiff's estimated repairs for the family room total $62,779.09. P-14 p. 1. Plaintiff's estimated repairs for the bedrooms total $44,727.00. P-14 p. 2. The Court does not find Plaintiff is entitled to these full amounts as actual damages for violation of the RESDL and UTPCPL because some of the repairs are optional and not necessary and some of the repairs are not related to the deterioration in the walls. *See* P-14; P-15.

---

[8] At the beginning of trial, the Parties stipulated that the request for attorneys' fees under the UTPCPL would be heard through post-trial submissions. Trial Tr. vol. I, 8:6-12. Therefore, the Court does not consider an award of attorneys' fees and costs at this time.

23

Mr. Gavin's estimated repairs for rebuilding the bedroom walls totaled $15,260.00. P-15 ¶ 1. Plaintiff is entitled to recover this amount. Mr. Gavin's proposal included additional options for sistering floor joists, installing new shutters, and replacing windows. Id. at ¶¶ 1.14-1.16. Plaintiff is not entitled to recover for these optional items as they were not necessary to complete the repairs for the deteriorated interior walls.

Mr. Gavin's estimated repairs for rebuilding the wall in the family room totaled $35,680.00. Id. at ¶ 2. Plaintiff is entitled to recover this amount. Again, Mr. Gavin's proposal included additional options for shutters and windows, but Plaintiff is not entitled to recover for these optional items because they were not necessary for the repairs to the deteriorated interior walls. Id. at ¶¶ 2.1-2.2.

The Court finds actual damages, therefore, are in the amount of $50,940.00. The repairs completed for the deterioration of the interior bedroom and family room walls seem fair and reasonable. The home was nearly fifty (50) years old and ran its course, but the deterioration in the interior walls was clearly a material defect known by the Defendants that was not disclosed. This material defect should have been disclosed and highlighted for Plaintiff in the SDS to allow Plaintiff to discover the problem and any potential solutions. The Court declines to award any additional damages under the UTPCPL because the actual damages alone are significant.

## V.   FINAL CONCLUSION

In consideration of the evidence, arguments, exhibits, and testimony presented at trial, which was held before the undersigned from October 6, 2020 through October 8, 2020, along with the submissions of the Parties thereafter, this Court concludes that the Plaintiff has proven one material defect that the Defendants failed to disclose on the SDS for which she should recover: the deteriorated interior walls in the bedrooms and family room. All other claims were either not

24

material defects and/or were not proven. Plaintiff is entitled to damages in the amount of $50,940.00 for violations of the RESDL and the UTPCPL.

This Court's Verdict and Order consistent with this Decision is being entered on this same date.

BY THE COURT:

_July 1, 2021_
DATE

ROBERT O. BALDI, J.

25

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

# Exhibit "B"

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

KATHLEEN NICHOLS-GOULD :
    *Plaintiff,* :
     :
     :
**v.** :     No. 2018-06816
     :
CHARLES P. MCDONALD, JR. and :
SUSANNE MCDONALD, h/w :
    *Defendants.* :

## MEMORANDUM DECISION

This Memorandum Decision addresses Kathleen Nichols-Gould's ("Plaintiff's") Post-Trial Motion for Attorney's Fees. For the reasons set forth below, the undersigned grants said Post-Trial Motion and awards $14,838.50 in attorney's fees and $3,680.80 in costs to Plaintiff in an appropriate Order to follow.

### A. Background

After a three-day bench trial in the above captioned case, the Court issued its Order and Verdict along with a written Decision on July 1, 2021, in which the Court found for Plaintiff in the amount of $50,940.00. The Court's Order stated that "Counsel for Plaintiff may file a Petition for Attorney's fees. The Court will schedule a phone conference with Counsel to discuss the process to be followed concerning same." On July 10, 2021, Plaintiff filed the instant Post-Trial Motion seeking Attorney's Fees pursuant to the Court's July 1, 2021 Order and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201.9.2 (authorizing an award of reasonable attorney's fees and costs for violation of the Act).

THIS ORDER/JUDGMENT WAS DOCKETED AND SENT ON 03/08/2022 PURSUANT TO PA. R. C. P. 236.

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

## B. <u>Attorney's Fees</u>

Attorney's fees and costs are a statutory right under the UTPCPL within the sound discretion of the trial court. 73 P.S. § 201.9.2. The UTPCPL allows for the recovery of "reasonable" attorney's fees and "was not intended to provide a claimant, or his attorney, with a windfall or bonanza should he or she be successful." <u>Boehm v. Riversource Life</u>, 117 A.3d 308, 336 (Pa. Super. 2015) (citations omitted). Therefore, Pennsylvania courts have recognized that there should be "a sense of proportionality between an award of damages and an award of attorney's fees [under the UTPCPL]." <u>Richards v. Ameriprise Fin., Inc.</u>, 217 A.3d 854, 868-71 (Pa. Super. 2019) (citing <u>McCauslin v. Reliance Fin. Co.</u>, 751 A.2d 683, 686 (Pa. Super. 2000)).

At the same time, however, "the fee-shifting statutory provision of the UTPCPL is designed to promote its purpose of punishing and deterring unfair and deceptive business practices and to encourage experienced attorneys to litigate such cases, even where recovery is uncertain." <u>Id</u>. (citing <u>Krebs v. United Refining Co. of Pennsylvania</u>, 893 A.2d 776, 788 (Pa. Super. 2006) (citations omitted)). Thus, in considering such an award, the Court may inquire into the time and labor required, the novelty and difficulty of the case, the customary charge of members of the bar, the amount involved and the certainty of compensation, among other factors. <u>See</u> <u>Skurnowicz v. Lucci</u>, 798 A.2d 788, 796 (Pa. Super. 2002) (superseded by statute on other grounds in <u>Milliken v. Jacono</u>, 60 A.3d 133 (Pa. Super. 2012)).

### 1. Time and Labor Required.

This case lasted two and one-half years from beginning to end, involved complex issues, and concerned multiple alleged defects throughout the property (flooded basement, deteriorated bedroom walls, deteriorated family room walls, defective tile, exterior flooding, exterior masonry, defective fencing, and exterior flooding). The trial involved three days of testimony, a handful of

expert witnesses, and several motions *in limine*. Accordingly, the time and labor required to litigate this case was significant.

Because the counts in this case were tried in a single proceeding, it is difficult to segregate the amount of time that Plaintiff spent developing each count. Twp. of S. Whitehall v. Karoly, 891 A.2d 780, 785 (Pa. Commw. 2006). Thus, it was Defendants' burden to establish a basis for segregating the hours spent on Plaintiff's successful and unsuccessful counts. Id. Like in Karoly, Defendants presented no evidence by way of affidavit or otherwise to challenge the accuracy and reasonableness of the hours charged by Plaintiff's counsel. See id.

Accordingly, Defendants have waived the argument that Plaintiff's total claimed attorney's fees are inaccurate or unreasonable, and this Court agrees with Plaintiff that she is technically entitled to recover up to 100% of the 125.75 hours that Plaintiff's counsel spent preparing Plaintiff's case. See Exhibit 1 to Plaintiff's Post-Trial Motion for Attorney's Fees. However, Plaintiff was not ultimately successful with respect to all items of damages claimed. Therefore, the Court will modify the award of attorney's fees to 40% of the total amount claimed by Plaintiff for the reasons set forth in more detail below.

2. Novelty and Difficulty of Case.

Although this case was not tremendously novel, it did involve an interpretation of the Pennsylvania Real Estate Seller's Disclosure Law ("RESDL"), 68 Pa.C.S. §§ 7301-7314, and the UTPCPL, in addition to Plaintiff's contract and common law claims. Furthermore, there were a number of alleged material defects, and because Plaintiff served as her own general contractor, it was necessary to hire expert witnesses to summarize the entire project and the costs associated with each item to be repaired. The case was hotly contested and necessitated extensive discovery

3

Case# 2018-06816-89 - JUDGE:35 Received at County of Bucks Prothonotary on 06/10/2022 4:05 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: Elizabeth Schecter

and several site visits by the parties and expert witnesses. Thus, this case was relatively difficult to litigate.

### 3. Difficulty of Questions Involved.

The questions involved in this case were also relatively complex, in that there were a number of overlapping legal issues for the parties and the Court to unpack. For example, the undersigned questioned the parties on the effect of exculpatory language in the Seller's disclosure sheet, and its interaction with Plaintiff's statutory rights under the RESDL. See Trial Transcript ("TT"), Vol II, 126:2-8; TT, Vol III, 86:6-25; 87:1-25; 88:1-5.

In addition, the parties briefed the Court on whether defects that were known but thought to be rectified or that were caused by age or external factors met the definition of a defect under the RESDL. See TT, Vol III, 82:18-25; 90:11-23, 97:12-19. Accordingly, the questions involved in this case were relatively difficult.

### 4. Skill Required.

This case involved numerous alleged defects, extensive discovery, and the presentation of multiple witnesses over several days of testimony. The parties were each represented by experienced and tenacious counsel. Accordingly, this case required significant skill to litigate.

### 5. Customary Charges.

The parties stipulated that the reasonable hourly rate is $295 and that no expert testimony would be required on this point. See TT, Vol I, 8:6-12. Accordingly, the Court accepts that $295 is the hourly rate and will issue its award in accordance therewith.

4

6. Amount in Controversy.

There was well over $1,000,000.00 in controversy in this action.[1]  See Plaintiff's
Memorandum of Law in Support of Post-Trial Motion for Attorney's Fees. Thus, the amount in
controversy was substantial.

7. Benefits Resulting.

This Court awarded Plaintiff $50,940.00, approximately 20% of Plaintiff's requested relief,
to compensate Plaintiff for Defendants' deceptive conduct. Thus, Plaintiff received a limited
though demonstrable benefit from Plaintiff's counsel's services. Accordingly, and as mentioned
above, the Court finds that Plaintiff is entitled to 40% of her total requested attorney's fees, or
$14,838.50, representing a reasonable and proportionate award for the amount of benefit resulting
to Plaintiff as a result of Plaintiff's counsel's services.

8. Contingency.

Plaintiff's counsel declined to elaborate on whether his compensation was contingent or
certain. Nonetheless, the parties stipulated that $295 is the reasonable hourly rate and that
Plaintiff's costs were reasonable. See TT, Vol I, 8:6-12. Thus, the Court's central focus in
resolving this Motion is the amount of time that Plaintiff's counsel expended and the extent to
which the time billed translated into a benefit to Plaintiff.

---

[1] **RESDL Damages**
$241,259.58 cost to repair undisclosed material defects
$43,426.22 interest from 4/30/18 at 6% per annum (3 years)
**UTPCPL Damages**
$729,962.28 3x actual damages as penalty under UTPCPL
$TBD attorney's fees ($295 per hour) and costs under UTPCPL
$TBD expert testimony fees at $150 per hour

5

9. Conclusion.

In summary, the Court finds that while Plaintiff is technically entitled to recover up to 100% of the 125.75 hours billed by Plaintiff's counsel, an award of 40% of the total amount of time billed is reasonable and proportionate in light of the amount of benefit resulting to Plaintiff as a result of Plaintiff's counsel's services. The Court will issue an appropriate Order consistent with this Decision.

BY THE COURT:

3/7/22
DATE

ROBERT O. BALDI, J.

6